IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER LEE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.            ) | CIVIL ACTION NO. 3:14cv1169-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I. Introduction**

Plaintiff Christopher Lee Smith ("Smith") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Smith was 42 years old on the date of alleged onset of disability (R. 28), and has tenth grade education.  (R. 40).  His prior work experience includes work as a Molding Machine Operator, Security Guard, Material Handler, Hand Finisher, and

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Roofer Helper. (R. 28). Following the administrative hearing, the ALJ concluded that Smith has severe impairments of "generalized anxiety disorder, not otherwise specified; rule out benzodiazepine dependence; obesity; L5-S1 disc herniation; T6 herniated disc; hypersomnia; hypertension; and status post-surgical repair of the left ankle/foot repair." (R. 15). The ALJ found that Smith was unable to perform his past relevant work but concluded that he

> has the residual functional capacity to perform a sedentary work as defined in 20 CFR 404.1567(a) except he would require an on-demand sit/stand option to relieve pain and discomfort and he can only ambulate short distances of up to 75 yards per instance. He can frequently operate foot controls and frequently reach overhead. He should never climb ladders or scaffolds but he can occasionally climb ramps and stairs. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools or hazardous processes. He should be restricted from hazards such as heights or dangerous machinery but is able to avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar and approaching people or vehicles. He can occasionally operate a motor vehicle and can have frequent exposure to weather, atmospheric conditions, humidity and wetness. He can never be exposed to extreme heat or cold or vibration. The claimant can only remember short simple instructions and would be unable to deal with detailed instructions. He can do simple routine repetitive tasks but is unable to do detailed or complex tasks. He is able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually, but would be unable to perform assembly line work with production rate pace but could perform goal-oriented work. He can have frequent interaction with the general public, coworkers and supervisors and time off task can be accommodated by normal breaks.

(R. 17).

Using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, the ALJ concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R.

4

28-29). Accordingly, the ALJ concluded that the plaintiff was not disabled. (R. 29).

**B. Plaintiff's Claims.** Smith presents two issues for the Court's review. As stated by Smith, the issues are as follows.

1. Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's complaints of pain consistent with the Eleventh Circuit Pain Standard; and

2. Whether the ALJ failed to properly articulate good cause for according less weight to the opinions of the Plaintiff's treating physician.

(Doc. # 14, Pl's Br. at 5 & 9).

### IV. Discussion

This court's ultimate inquiry is whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992). When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion or record over another.

*A. The ALJ failed to properly evaluate the credibility of the plaintiff's complaints of pain.* The law is well-established in this circuit. The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical

condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991)*; Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986).

Moreover, "[p]ain is clearly a non-exertional impairment that limits the range of jobs the claimant can perform." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *Walker*, 826 F.2d at 1003 ("Pain is a nonexertional impairment."). *See also Phillips v. Barnhart*, 357 F.3d 1232, 1242 fn 11 (11th Cir. 2004) ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include . . . pain limitations. . .") Furthermore, in this circuit, pain itself can be disabling. *See Foote*, 67 F.3d at 1561; *Marbury*, 957 F.2d at 839.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62; *Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If

proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

After reciting the law, the ALJ regurgitated some of the medical evidence. The ALJ found the plaintiff's testimony "not supported by substantial objective medical evidence . . . and that the claimant's testimony is an exaggeration and not credible." (R. 26). The ALJ then says this:

> Although a MRI indicated disc herniation at L5-S1 and a herniated disc at T6, multiple examinations indicated no neurological deficits, muscle atrophy, nor significant weight loss, generally associated with protracted prolonged pain at a severe level. Examinations also indicated no muscle spasms, bony abnormalities, or tenderness in the thoracic spine. . . . In this case, the record reflects excessive symptomotology and not enough pathology, but symptoms alone do not establish disability unless medical signs and laboratory findings show that there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged (20 CFR 404.1529 and 416.920, and SSR 96-04p). Here, there is no such medically determinable impairments that could reasonably be expected to produce the symptoms alleged. Furthermore, the claimant can ambulate independently and has normal gait and station. In sum, the totality of the medical evidence reflects excessive symptomotology and not enough pathology with regard to the claimant's alleged lumbar and thoracic pain, specifically considering repeated negative examination findings. There is no evidence to support any greater limitation due to these impairments than that set forth above. . .
>
> \*     \*     \*

>	The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.  Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature. . . .

(R. 26).

The problem for the court is the ALJ selectively culling the record for evidence to support his determination that Smith is not disabled, and in doing so, failed to reconcile inconsistencies and ambiguities in the medical record.  For example, on March 30, 2007, Smith presented to the Wedowee Hospital complaining of pain in shoulders, legs and tailbone.  (R. 350).  At that time, radiology reports indicate "broad based central disc protrusion" at L5-S1 as well as mild effacement of the thecal sac and slight displacement of nerve roots at S1.  (R. 352, 294-95)  There was also disc herniation at T10-11.  (*Id*.).  The ALJ does not mention these radiology reports.

The ALJ also does not mention MR scans of the cervical spine, thoracic spine and lumbar spine taken on July 10, 2008.  The cervical spine MRI revealed the following:

>	Findings:   C2-C3: Mild degenerative desiccation without focal bulging or herniation.
>	
>	C3-C4: Degenerative desiccation with minimal bulging.  Mild right uncovertebral joint hypertrophy is present causing mild bony stenosis of the right neural foramen.
>	
>	C4-C5: Mild degenerative desiccation without focal bulging or herniation.
>	
>	C5-C6: Mild degenerative desiccation with minimal bulging.  There is asymmetric left posterior bulging, but no definite cord compression.
>	
>	C6-C7: Degenerative desiccation and mild diffuse bulging.  Posterior central

bulging could represent a tiny protruding herniation. This does not cause direct cord or root compression.

Overall, there is slight reversal of the cervical lordosis at the C4 level. The cervical vertebral bodies and the spine cord are normal.

IMPRESSION:

1. Multilevel degenerative disc changes as described without definite cord or root compression.
2. Possible small posterior central disc herniation C6-C7 without cord or root compression. This is not confirmed on sagittal images.
3 Incidentally noted are small focal areas of increased signal in the central cord at the C2-C3 and C3 level which probably represent visualization of the central canal, a normal variant.

(R. 289, 251-52).

The MRI of the thoracic spine also revealed abnormalities:

Findings: T3-T4: Minimal bulging which touches but does not deform the thoracic cord.

T5-T6: Degenerative desiccation with a posterior central extruded herniation. This causes moderate anterior central cord compression. There is some increased signal in the adjacent thoracic cord consisting of mild myelomalacia.

T6-T7: Minimal posterior bulging with subtle anterior central cord compression.

T7-T8: Degenerative bulging, possibly a small protruding herniation causing mild anterior central cord compression.

T9-T10: Degenerative desiccation with a small left posterior central disc herniation causing mild right anterior cord compression.

T10-T11: Degenerative desiccation with a right posterior extruded disc herniation causing mild left anterior cord compression.

The remainder of the thoracic intervertebral discs, vertebral bodies, and the

> thoracic cord are normal.
>
> IMPRESSION: Multilevel degenerative bulging and/or herniated disc with cord compression as described. These change are most marked at T5-T6, where there appears to be some degree of cord myelomalacia associated with the moderate anterior central cord compression by the herniated disc.

(R. 291, 253-54).

Finally, the lumbar spine MRI revealed a "right posterior central extruded disc herniation" at L5-S1. (R. 293). The impression from the MRI was "[p]osterior central extruded disc herniation L5-S1 with slight bilateral S1 root displacement and possible mild compression." (*Id.*)

Although the ALJ references a December 27, 2010 "scoliosis study" which was "unremarkable," (R. 20), he ignores a January 17, 2011 MRI that established "mild central disc protrusions without cord compression at probably T7-8 and T10-11." (R. 473). The ALJ also ignores a treatment note that Smith was suffering from "increased thoracic back pain with lower extremity neuropathy." (R. 373).

The ALJ considered the plaintiff's back condition as it related to L5-S1 and T-6. However, the ALJ ignores many of Smith's radiology results, and he did not consider evidence of other herniation, bulging, dessiccation or damage at C6-C7, C3, T7-T8 or T10-T11. Thus, the court is unable to determine whether he considered this medical evidence when he determined that there was insufficient pathology to support Smith's pain testimony.

The ALJ also discredited Smith's credibility because of his allegedly conservative treatment. However, the ALJ ignores medical evidence from the West Georgia Neurology

and Pain Clinic of Smith's efforts to treat his pain. For example, on April 2, 2008, Smith presented to the clinic for pain management of his back, neck and leg pain. (R. 424-25). Although the ALJ acknowledged that Smith was treated at the clinic in February, March and May 2010, the ALJ ignores the medical evidence that Smith began treatment on April 3, 2008 for the following conditions:

> 1. Documented thoracic spine HPN [herniated nucleus pulposus] T10-T11 by hx and exam Suspect cord involvement here . . . hyperreflexia
>
> 2. Documented L5-S1 HPN [herniated nucleus pulposus] . . . Given above exam/hx - again - more sig. pathology is suspected.
>
> 3. LUE [lower upper extremity] C7 (tricep) by hyperreflexia with LUE C6 hyporeflexia would suggest Cspine pathology with possible L C6 root & cord involvement.
>
> 4. . . . migraine headaches - may be related to Cspine pathology . . .

(R. 423).

Smith consistently returned to the clinic to be treated for pain management during 2008. (R. 406-15). On August 27, 2008, Smith reported that he had seen a surgeon who did not advise surgery because it would be "very complicated." (R. 410-11). His pain continued to increase. (R. 414, 409, 406-07). The pain clinic noted that his "baseline pain is not controlled." (R. 415).

In 2009, Smith was seen every month at the pain clinic. (R. 391-405). In January 2009, he complained that his lower back was "deteriorating," but the pain medication was providing "good control." (R. 405). The treatment record specifically notes that his "[p]ain

[is] never completely resolved but can be tolerable." (R. 396). On September 22, 2009, Smith complained of more pain in his hips, and "increased spasms left mid back muscles by palpation" were noted. (R. 395). On November 20, 2009, Smith reported that his orthopaedic surgeon told him the "pain may be decreased but will not likely be resolved." (R. 392-93). On January 20, 2010, Smith presented to the clinic complaining of increased pain. (R. 390). His pain medications were increased. (*Id*.). Smith was consistently treated with numerous pain medications.[5]

Despite this longitudinal treatment history, the ALJ completely ignores this medical evidence. More importantly, the ALJ ignores treatment notes that indicate that Smith's back pain increased significantly over time, and that his orthopaedic surgeon "felt that surgery may actually increase" his problems. (R. 385). To say the least, it is odd that the ALJ would fault the plaintiff for conservative treatment when more aggressive treatment such as surgery was not recommended. The ALJ ignores over two years of treatment records for pain management. The ALJ picked through the medical records and chose those entries that supported his position. That was erroneous.

A mere statement that the ALJ carefully considered all the testimony and exhibits is

---

[5] There is evidence in the record that Smith takes Oxycontine, Soma, Neurontin, Seroquel and Methadone to control his pain. (R. 417, 515, 569, 576-77, 596, 624-26). Dr. Peterson indicated that Smith would have difficulty working because of the effects of his medication. Because the court concludes that this case must be remanded, the court does not address the ALJ's failure to properly consider the side effects of the plaintiff's medications on his ability to work. However, on remand, the Commissioner should insure that the ALJ properly considers every side effect of the plaintiff's medications and determines whether the side effects constitute an impairment. Thereafter, the Commissioner shall insure that the effects of the plaintiff's medications are considered, singly and in combination with his other impairments.

not sufficient to comply with his duty to state with particularity the weight given to difference medical evidence and to provide his reasoning for his decision. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "[I]t is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, . . . ." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). *See also, Gastineau v. Mathews*, 577 F.2d 356, 358 (6th Cir. 1978) ("It is not the function of this Court to resolve conflicts in the medical evidence, but rather it is the function of the Secretary, whose expertise is given great deference."). Because the ALJ ignored numerous medical records, this case must be remanded for further proceedings.

### B. The ALJ failed to properly consider the opinion of the treating physicians.

Smith next argues that the ALJ improperly discounted the opinion of his treating physician, Dr. Russell Peterson. (Doc. # 14, Pl's Br. at 9). The law in this circuit is also well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones*, 941 F.2d at 1532-33; *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

On September 8, 2011, Dr. Russell Peterson conducted a physical consultative examination of Smith at the request of the Commissioner. (R. 515-22). Dr. Peterson specifically noted that Smith "has significant changes on his MRI compatible with the pain

he claims." (R. 516). Dr. Russell's evaluation of the cervical, thoracic and lumbar spine revealed the following.

> Cervical/Thoracic/Lumbar Spine: Quite tender over the thoracic area, no visual outward signs, fairly normal range of motion, but states he has pain and tenderness in the spine with movement. He has tenderness with flexion extension with the cervical spine and thoracic spine, but overall movement is pretty good. The lumbar spine is tender in the SI and lower back area but no radacular (sic) pain and no straight leg raising. He appeared to be neurologically intact and outwardly a faily (sic) normal physical examination.
>
> \*     \*     \*
>
> This patient will have a lot of difficulty working construction, driving a truck, etc. The medication he takes will prevent him from working. He will need pain management, his xrays are much worse than what appears on physical examination. Even a sedentary job would prove difficulty (sic) with stamina, difficulty lifting, trouble with even minor duties for any period of time due to chronic pain.

(R. 517-18).

Dr. Peterson opined that Smith could sit and stand for periods of time, he could not use his feet for repetitive motion "for any period of time." (R. 520). Finally, he concluded that Smith had pain to the extent that it was "[a] [s]ignificant handicap with sustained attention and concentration; eliminating skilled work tasks." (R. 522).

On September 12, 2011, Smith presented to Dr. Peterson as a new patient. (R. 530). On September 26, 2011, Smith complained to Dr. Peterson of chronic back pain and sought pain management. (R. 529, 596). Dr. Peterson prescribed a TENS unit for Smith.[6] Dr.

---

[6] Smith testified at the administrative hearing that he did not receive the unit due to a problem with insurance. (R. 53).

Peterson continued to treat Smith on a monthly basis. (R. 530, 575-96).

The ALJ recited Dr. Peterson's consultative examination of Smith and his physical capacity evaluation of Smith. (R. 20).

In assessing residual functional capacity, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz*, 825 F.2d at 279. Further, the ALJ is required to accord considerable weight to the opinions of the claimant's treating physicians absent good cause for not doing so. *Id*. at 279-80. The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. The law does not necessarily require the ALJ to accept the validity of Dr. Peterson's opinion that Smith's chronic pain will impact his ability to perform work, but it does require that, in determining Smith's residual functional capacity and in evaluating the credibility of Smith's allegations of pain, the ALJ must consider *all* relevant evidence in the case record, and he must specifically state "good cause" for rejecting the medical opinions of a treating physician. 20 CFR § 404.1545(a)(1); 20 CFR 416.929(c)(1); *Lewis*, 125 F.3d at 1440. While the ALJ parroted portions of the medical evidence, he did not discuss the weight he assigns to the medical evidence. In particular, he does not accord Dr. Peterson's opinion any weight as Smith's treating physician. The ALJ noted that "[t]he only provider to recommend more restrictions that are significant was Dr. Peterson. The undersigned declines to accept his position over the rest of the evidence, as it appears to be inconsistent with the entire picture and depends heavily on the claimant's complaints." (R. 27). The

problem with the ALJ's statement is manifest.  Because the ALJ does not discuss Dr. Peterson's opinions as a treating physician, the court cannot determine from this conclusory statement whether the ALJ is discounting Dr. Peterson's consultative opinion or his opinion as a treating physician.  Moreover, because the ALJ ignored evidence from the pain clinic, and many of the radiology reports, the ALJ's rationale for discrediting Dr. Peterson is compromised.

Rote recitation of the medical evidence is not a substitute for articulating reasons for discrediting some evidence while accepting other evidence.  The ALJ's conclusory analysis is simply deficient as a matter of law.  It is the responsibility of the ALJ to conduct the appropriate legal analysis, and his written decision must include sufficient reasoning to permit the court to determine that he has done so.

### V.  Conclusion

"Failure to apply correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal."  *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).  Thus, for the reasons as stated, the decision of the Commissioner will be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273,

1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

Done this 16th day of May, 2016.

                                                    /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE